Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Anna Tutundjian (SBN 309969)
Atutundjian@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant*
*Hanesbrands Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTITA CASILLAS, an individual<br><br>Plaintiff,<br><br>vs.<br><br>HANESBRANDS INC., a Maryland corporation d/b/a WWW.MAIDENFORM.COM,<br><br>Defendant. | Case No. 2:24-cv-01641-RGK (JCx)<br><br>Assigned to: Hon. R. Gary Klausner<br><br>**DEFENDANT HANESBRANDS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Complaint filed:  January 18, 2024 |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 8, 2024 at 9 a.m., or as soon thereafter as this matter can be heard before the Honorable R. Gary Klausner, in Courtroom 850 of the Roybal Federal Building and U.S. Courthouse, located at 255 East Temple Street, Los Angeles, CA 90012, Defendant Hanesbrands Inc. ("Hanesbrands") will and hereby does move the Court for an order dismissing with prejudice Plaintiff's Complaint asserted against it in this action.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 29, 2024. This Motion to Dismiss is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and upon such oral argument and other submissions that may be presented at or before the hearing on this Motion.

Respectfully submitted,

SIDLEY AUSTIN LLP

Dated:  March 6, 2024          By: */s/ Amy P. Lally*
                              Amy P. Lally
                              Anna Tutundjian

                              *Attorneys for Defendant*
                              *Hanesbrands Inc.*

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................... 1

II. FACTUAL ALLEGATIONS .................................................................. 2

III. LEGAL STANDARD ............................................................................ 3

IV. ARGUMENT ......................................................................................... 4

    A. Plaintiff Does Not Plausibly Allege a Claim Under Section 638.51 ......... 4

        i. Plaintiff's Claim Fails Because There is No Legally Protected Privacy Interest in IP Addresses. ...................................... 5

        ii. Failure to adequately plead the use of a "Pen register" or "Trap and trace device." ........................................................ 7

        iii. Plaintiff Has Failed to Plead that the Statutory Exceptions Do Not Apply .......................................................................... 9

        iv. Plaintiff Does Not Have a Private Right of Action Under Section 638.51 or Section 637.2. ............................................... 11

        v. Even if Section 637.2 Conferred a Private Right of Action, Plaintiff's Lack of Injury Means She Lacks the Requisite Statutory Standing to Bring this Claim ........................................ 14

V. CONCLUSION ................................................................................... 17

DEFENDANT HANESBRANDS INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Application of United States for Ord. Authorizing the Installation &
      Use of Pen Regs. & Trap & Trace Devices,*
      No. 18-cv-8461, 2018 WL 6442661 (S.D. Fla. Nov. 30, 2018) ......................... 8, 16

*Ashcroft v. Iqbal,*
      556 U.S. 662 (2009) ............................................................................................ 3

*Bell Atlantic Corp. v. Twombly,*
      550 U.S. 544 (2007) ......................................................................................... 3, 4

*Bona Fide Conglomerate, Inc. v. SourceAmerica,*
      No. 314CV00751GPCDHB, 2016 WL 3543699 (S.D. Cal. June 29,
      2016) ................................................................................................................ 14

*Capitol Records Inc. v. Thomas-Rasset,*
      No. 06-cv-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) ....................... 5, 8, 9

*Columbia Pictures Indus. v. Bunnell,*
      No. 06-cv-1093, 2007 WL 2080419 (C.D. Cal. May 29, 2007) ....................... 9

*Crim. Prods., Inc. v. Doe,*
      No. 16-CV-2352 WQH (JLB), 2016 WL 6581850 (S.D. Cal. Nov. 7,
      2016) .................................................................................................................. 7

*Crusader Ins. Co. v. Scottsdale Ins. Co.,*
      54 Cal. App. 4th 121 (1997) ............................................................................ 12

*DirecTV, Inc. v. Treworgy,*
      373 F.3d 1124 (11th Cir. 2004) ....................................................................... 16

*Greenley v. Kochava,*
      2023 WL 4833466 (S.D. Cal. July 27, 2023) ........................................... *passim*

*Int'l Refugee Assistance Project v. Trump,*
      883 F.3d 233 (4th Cir. 2018) ........................................................................... 13

*Levy v. adidas AG,*
      No. CV186542PSGMAAX, 2018 WL 5942000 (C.D. Cal. Nov. 13,
      2018) .................................................................................................................. 9

*Malibu Media, LLC v. Pontello,*
      No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .................... 5, 6

*Maya v. Centex Corp.,*
      658 F.3d 1060 (9th Cir. 2011) ........................................................................... 4

*McGee v. S-L Snacks Nat'l,*
      982 F.3d 700 (9th Cir. 2020) ........................................................................... 15

ii

*Mikulsky v. Noom, Inc.*,
  2023 WL 4567096 (S.D. Cal. July 17, 2023) ................................................. 15, 16

*Norman–Bloodsaw v. Lawrence Berkeley Lab.*,
  135 F.3d 1260 (9th Cir. 1998) .................................................................. 15

*Ove v. Gwinn*,
  264 F.3d 817 (9th Cir. 2001) ..................................................................... 3

*Pareto v. FDIC*,
  139 F.3d 696 (9th Cir. 1998) .................................................................... 15

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012) ................................................................................. 13

*Roberts v. Corrothers*,
  812 F.2d 1173 (9th Cir. 1987) ................................................................. 15

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ............................................ 12, 14, 16

*Tex. Voters All. v. Dallas Cnty.*,
  495 F. Supp. 3d 441 (E.D. Tex. 2020) .......................................... 12, 13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................................... 14, 15

*United States v. Acevedo-Lemus*,
  No. SACR 15-00137, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016),
  *aff'd*, 800 F. App'x 571 (9th Cir. 2020) ............................................... 6

*United States v. Christie*,
  624 F.3d 558 (3d Cir. 2010) ...................................................................... 6

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) .................................................................... 6

*United States v. Fregoso*,
  60 F.3d 1314 (8th Cir. 1995) .................................................................... 8

*United States v. Heckenkamp*,
  482 F.3d 1142 (9th Cir. 2007) ........................................................... 6, 11

*United States v. Norris*,
  942 F.3d 902 (9th Cir. 2019) .................................................................... 7

*Vasquez v. Solo 1 Kustoms, Inc.*,
  27 Cal. App. 5th 84 (2018) ..................................................................... 11

*Wallace v. Cellco P'ship*,
  No. 14-cv-8052, 2015 WL 13908106 (C.D. Cal. Feb. 9, 2015) ............... 11

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................... 12

iii

*In re Zynga Privacy Litigation,*
   750 F.3d 1098 (9th Cir. 2014) ..................................................................... 6

**Statutes**

18 U.S.C. § 3121 ......................................................................................... 11

CAL. PEN. CODE § 635 ........................................................................... 12, 16

CAL. PEN. CODE § 637.2 .......................................................... 11, 12, 13, 14, 16

CAL. PEN. CODE § 637.3 ............................................................................... 14

CAL. PEN. CODE § 638.50 ........................................................................... 4, 12

CAL. PEN. CODE § 638.51 ...................................................................... *passim*

CAL. PEN. CODE § 638.52 ............................................................................... 4

CAL. PEN. CODE § 672.2 ............................................................................... 16

**Other Authorities**

86 Cal. Op. Att'y Gen. 198 ............................................................................ 8

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE
   INTERPRETATION OF LEGAL TEXTS at 183 (2012) ..................................... 13

DEFENDANT HANESBRANDS INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

I. __INTRODUCTION__

Plaintiff Miltita Casillas, a serial filer of cookie-cutter lawsuits, claims she visited www.maidenform.com (the "Maidenform Website"). She claims that, while on the Maidenform Website, Defendant Hanesbrands Inc. ("Hanesbrands") used "pen register" or "trap and trace" technology to collect information about her. Specifically, she alleges that Hanesbrands collected an IP address, and that an IP address "reveals information about a user."

This case is one of dozens filed in the last six months alleging the use of "pen register" software on normal, every-day websites. Each complaint pleading near-*verbatim* allegations arising from a website operator's alleged collection of innocuous routing information (*i.e.*, IP addresses). Their theory is always the same: allege that state *criminal* statutes modeled after federal 1980's-era statues *criminalizing* the use of pen register and trap and trace devices to intercept, record, and decode *telephone* calls now applies to routine communications between Internet-connected devices. Each complaint merely swaps in a different defendant and website. The plaintiffs, however, allege no harm—nor could they. And the only reason these cases exist today is because they misinterpret both the language and holding of the recent decision in *Greenley v. Kochava, Inc.*, which denied a motion to dismiss a claim predicated on California's version of the pen-register statute (Section 638.51). But, for five different reasons, Plaintiff's Complaint fails to state a claim upon which relief can be granted:

*First*, Plaintiff's allegations amount to the novel theory that Hanesbrands allegedly deployed "pen register" and "trap and trace device" software when its website—in the ordinary course of interfacing with Internet-connected devices—logged the temporary IP addresses assigned to its customers' devices. Yet, Plaintiff's claims necessarily fail because, as Courts have made clear, there *is no legally protected privacy interest in an IP address* because IP addresses are both necessary for the Internet to function and the most common type of IP addresses were *designed* to change frequently, sometimes changing every time the user accesses the Internet.

*Second*, even if there was a legally protected interest in IP addresses, Plaintiff's claim must be dismissed because Plaintiff fails to allege that Hanesbrands used a "pen register" or "trap and trace device."

*Third*, even if Hanesbrands implemented a "pen register" or a "trap and trace device" (it didn't), Plaintiff cannot state a claim because her allegations are silent as to *two* permissible uses in the statute. *First*, she fails to allege that Hanesbrands was not using the pen register or trap and trace device "[t]o operate, maintain, [or] test a wire or electronic communication service." CAL. PEN. CODE § 638.51(b)(1). And *second*, her allegations reveal that she voluntarily accessed the Maidenform Website and *consensually* provided the information she claims was protected.

*Fourth*, like its federal counterpart, the California pen-register statute, Section 638.51, does not enumerate a private right of action. Instead, the statue expressly imposes only criminal liability. *See* CAL. PEN. CODE § 638.51(c).

*Fifth*, *even if* Section 638.51 conferred a private right of action (as opposed to the specific and exclusive criminal penalties enumerated therein), Plaintiff fails to adequately allege that she suffered an "injury" sufficient to confer the requisite statutory standing.

Each of these reasons alone warrant dismissal, this Motion takes each in turn.

## II.   FACTUAL ALLEGATIONS

Hanesbrands makes "undergarments and related products[.]" Complaint [ECF No. 1-2] ¶ 5. And, like most companies in modern America, Hanesbrands sells its products "via its website[s] throughout the United States[.]" *Ibid.* One of those websites is the Maidenform Website. Plaintiff, Miltita Casillas, is "a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law." *Id.* ¶ 4. As part of those efforts, she "recently visited [Hanes]'s website," *id.* at 3, *presumably*, the Maidenform Website.

Plaintiff alleges that Hanesbrands "has embedded at least one [pen register or trap and trace ('PR/TT')] beacon on its website[.]" *Id.* ¶ 18. According to Plaintiff,

2

Hanesbrands deployed these "beacons" "to capture electronic impulses originating from the site to identify the source of the communication, including the identity and geolocation of every website visitor." *Ibid.* But, out of concern for "'copycat' litigation," *ibid.*, "Plaintiff *does not specify the beacon by name in this Complaint*," *ibid.* (emphasis added). Instead, "Plaintiff will . . . *provide a fulsome explanation to Defendant upon reasonable request.*" *Ibid.* (emphasis added).

Though she intentionally omits any allegation as to what it is that Hanesbrands implemented on its Maidenform Website (if anything beyond routine, IP-address interfacing), Plaintiff proceeds with her allegation that Hanesbrands violated "Section 638.51 of the Penal Code[, which] provides that it is illegal to 'install or use a pen register or a trap and trace device without first obtaining a court order[.]'" *Id.* ¶ 27 (quoting CAL. PEN. CODE § 638.51 (2016)); *see also id.* ¶ 28 ("[Hanes] knowingly and criminally deployed pen register and trap and trace software to access Plaintiff's device, install tracking software, and track Plaintiff." (citing *Greenley v. Kochava*, 2023 WL 4833466, at *15–16 (S.D. Cal. July 27, 2023)). Plaintiff avers that, because of the violation, she "suffered both an economic injury and an intangible injury to Plaintiff's dignity caused by the violation of Plaintiff's right to privacy." *Id.* ¶ 29.

## III.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 678 (a pleading cannot rely on "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further

factual enhancement"); *Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Lack of statutory standing is analyzed under Rule 12(b)(6)—the effect of which is dismissal for failure to state a claim upon which relief can be granted, not lack of subject-matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

## IV.   ARGUMENT

### A.   Plaintiff Does Not Plausibly Allege a Claim Under Section 638.51

Plaintiff cannot plausibly allege a Section 638.51 claim. Section 638.51 of the California Penal Code provides "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." CAL. PEN. CODE § 638.51(a). A "Pen register" means a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b). A "[t]rap and trace device" means a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c). Section 638.51 imposes only criminal liability: "A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail . . . or by both that fine and imprisonment." *Id.* § 638.51(c).

Besides the inapposite case *Greenley v. Kochava, Inc.*, which found Section 638.51 applied to a third-party software provider (and not the website owner, like Hanesbrands here), no court has interpreted Section 638.51's scope or applicability. *See* No. 22-CV-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023).

---

4

###### i. Plaintiff's Claim Fails Because There is No Legally Protected Privacy Interest in IP Addresses.

Plaintiff alleges that Hanesbrands deployed "pen register" and/or "trap and device" software on its website to gather information about website visitors. Compl. ¶¶ 18, 24. According to Plaintiff, Hanesbrands was able to do so through an IP address, which "reveals information about a user." *Id.* ¶ 10. Plaintiff's claim fails because there is no legally protected privacy interest in IP addresses. Indeed, Courts are clear that IP addresses are necessary in order for the Internet to function.

*Capitol Records* is instructive here. 2009 WL 1664468. *Capitol Records* addressed computer devices connected through a "peer-to-peer network" where information was distributed from one user (the defendant) of the network to another (MediaSentry). "Peer-to-peer networks allow Internet users to connect to each other and transfer files directly from user to user. [ ] When files are distributed from one user to another user . . . a set of identifying information," including the distributor's IP address, "ties the files back to the user who distributed the files." *Id.* at *3. MediaSentry recorded the "computer connected to the file sharing network," which included "the IP address of the source of the packet." *Ibid.* The Court rejected defendant's assertion that MediaSentry violated the Pen Register Act "when it recorded the packets that included the IP address of the sender" because "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. If it did apply in those cases, then *the Internet could not function because standard computer operations require recording IP addresses* so parties can communicate with one another over the Internet." *Id.* at *3 (emphasis added). Indeed, IP addresses are "*transmitted as part of the normal process of connecting one computer to another over the Internet.*" *Ibid.* (emphasis added).

*Malibu Media* followed the reasoning of *Capital Records*. In *Malibu Media*, the plaintiff, Malibu Media, moved to strike defendant's affirmative defense claiming that "Malibu violated the Pen Register Act by scanning [its] titles and then tracking the IP

addresses of the users that respond with pieces of Malibu work without a court order[.] *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, *3 (E.D. Mich. Nov. 19, 2013). The court granted the motion and held that the Pen Register Act had no application: "*Because the IP address was voluntarily sent,* the Pen Register Act cannot prevent [Malibu] from recording that information." *Id.* at *4 (emphasis added).

Just as in those cases, Plaintiff voluntarily sent her IP address to the Maidenform Website, which was necessary for Plaintiff to interact with the website. As Courts have found, an IP address is automatically "conveyed to websites that an internet user visits[.]" *See United States v. Christie*, 624 F.3d 558, 563 (3d Cir. 2010); *see also United States v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007) ("An IP address is a standard way of identifying a computer that is connected to the Internet."). The mere logging of Plaintiff's IP address "between two computers" (*i.e.*, Plaintiff's device and the servers supporting the Maidenform Website)—which is information that "public websites," like the Maidenform Website, automatically log "of all visiting users" is how the Internet works, *United States v. Acevedo-Lemus*, No. SACR 15-00137, 2016 WL 4208436, at *1 n.1 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F. App'x 571 (9th Cir. 2020)—is not unlawful under the CIPA. *See also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (internet users lacked a reasonable expectation of privacy in the IP addresses of the websites they visited because "they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (a user did not have a reasonable expectation of privacy in URLs that revealed only basic identification and address information).

*Greenley v. Kochava*, which Plaintiff relies on in her Complaint, is not to the contrary. *See* 2023 WL 4833466. There, the defendant was accused of creating software that allowed it to surreptitiously intercept users' data when installed on third party applications, which it then sold to clients for advertising purposes. *Id.* at *1. Critically, the plaintiff never intended to communicate his IP address to defendant and the

defendant was a third party to the interaction between its clients and their consumers. *See* 2023 WL 4833466, at *1–2. Here, Plaintiff brings her claim against Hanesbrands alone (and not the third-party provider of the software Hanesbrands allegedly embedded on the Website) and Hanesbrands is alleged to have tracked data it accessed on its own website.

Moreover, Plaintiff never alleges that her IP address is unique to her. *See generally* Compl. This is a problem because "[m]ost consumer IP addresses are 'dynamic' as opposed to 'static.'" *Crim. Prods., Inc. v. Doe*, No. 16-CV-2352 WQH (JLB), 2016 WL 6581850, at *2 n.1 (S.D. Cal. Nov. 7, 2016) (cleaned up). "Static IP addresses are addresses which remain set for a specific user. Dynamic IP addresses are randomly assigned to internet users and *change frequently*. Consequently, for dynamic IP addresses, *a single IP address may be re-assigned to many different computers in a short period of time*." *Ibid.* (cleaned up & emphases added). As the Ninth Circuit observed, in a "dynamic" IP address, "the number changes each time the computer accesses the Internet," *United States v. Norris*, 942 F.3d 902, 904 n.2 (9th Cir. 2019), whereas with a "static" IP address "the number remains the same each time the computer accesses the Internet," *ibid.*

Because Plaintiff's claims are predicated on Hanesbrands's alleged logging of Plaintiff's IP address, she fails to state a claim because she does not allege whether her IP address is unique to her or whether it's dynamic and everchanging.

### ii.   Failure to adequately plead the use of a "Pen register" or "Trap and trace device."

Even if there was a legally protected interest in IP addresses (which there is not), Plaintiff's claim must be dismissed because Plaintiff fails to allege that Hanesbrands used a "pen register" or "trap and trace device." While Plaintiff alleges that Hanesbrands violated Section 638.51 because it "has embedded at least one [pen register or trap and trace ('PR/TT')] beacon on its website" (Compl. ¶ 18), she fails to identify anything that even remotely resembles a pen register or trap and trace device.

Indeed, out of a purported concern for "'copycat' litigation," *ibid.*, "Plaintiff *does not specify the beacon by name in this Complaint*," *ibid.* (emphasis added). Instead, "Plaintiff will, however, *provide a fulsome explanation to Defendant upon reasonable request*." *Ibid.* (emphasis added). This alone is fatal to Plaintiff's claim as Plaintiff all but concedes her allegations are conclusory at best.

*Second*, even if Plaintiff had offered more than conclusory allegations, Plaintiff's allegations make clear that there is no "pen register" or "trap and trace device" at issue here. Plaintiff's allegations are that Hanesbrands deployed spyware "to capture electronic impulses originating from the site to identify the source of the communication, including the identity and geolocation of every website visitor." Compl. ¶ 18. As the Office of the California Attorney General has recognized, "[a] 'pen register' records the numbers dialed out from a particular telephone line." 86 Cal. Op. Att'y Gen. 198 (citing *Smith v. Maryland*, 442 U.S. 735, 736, n.1 (1979); *People v. Blair*, 25 Cal.3d 640, 654 n.11 (1979)). And, "[a] 'trap and trace device' records the originating telephone numbers of the calls dialed into a particular telephone line. *Ibid.* (citing *People v. Suite*, 101 Cal. App. 3d 680, 684 (1980)); *see also United States v. Fregoso*, 60 F.3d 1314, 1320 (8th Cir. 1995) (explaining that a trap and trace device measures the electronic impulses of incoming calls, which reveals the originating number"). Nothing in Plaintiff's complaint establishes that Maidenform Website uses either a pen register nor a trap and trap device.

Moreover, these devices are installed by third parties, not participants to the phone calls being recorded. *See In re Application of United States for Ord. Authorizing the Installation & Use of Pen Regs. & Trap & Trace Devices*, No. 18-cv-8461, 2018 WL 6442661, at *5 (S.D. Fla. Nov. 30, 2018). Thus, the use of pen registers or trap and trace devices would not apply to website operators. Indeed, Section 638.51 "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them." *See Capitol Records Inc. v. Thomas-Rasset*, No. 06-cv-1497, 2009 WL 1664468, *3 (D. Minn. June 11, 2009). Otherwise, "the Internet

8

could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Ibid.*; *see also Columbia Pictures Indus. v. Bunnell*, No. 06-cv-1093, 2007 WL 2080419, at *2 (C.D. Cal. May 29, 2007).

### iii.   Plaintiff Has Failed to Plead that the Statutory Exceptions Do Not Apply.

Even if Hanesbrands implemented a "pen register" or a "trap and trace device," Plaintiff cannot state a claim because she fails to allege that Hanesbrands was not using the pen register or trap and trace device "[t]o operate, maintain, [or] test a wire or electronic communication service." CAL. PEN. CODE § 638.51(b)(1).

"[It] is Plaintiff's burden to allege facts sufficient to give rise to a plausible inference that every element is satisfied." *Levy v. adidas AG*, No. CV186542PSGMAAX, 2018 WL 5942000, at *4 (C.D. Cal. Nov. 13, 2018). Section 638.51(a), which is the basis for Plaintiff's claim, provides exceptions, including:

> (1)  To operate, maintain, and test a wire or electronic communication service; [and] (2) If the consent of the user of that service has obtained.

*Id.* §§ 638.51(b)(1)–(2). Curiously, Plaintiff does allege that Hanesbrands "did not obtain Plaintiff's knowing and informed consent[.]" Compl. ¶ 25. But nowhere does Plaintiff allege that Hanesbrands was not using these devices or processes "to operate, maintain, and test a wire or electronic communication service." *Id.* § 638.51(b)(1).

The arc of Plaintiff's invented cause of action is that, nowadays, "website owner[s]," like Hanesbrands, "can gather digital fingerprints as part of [their] identity resolution efforts . . . by deploying 'pen register' and/or 'trap and trace' spyware . . . on [their] website[s]." Compl. ¶ 14. Plaintiff says that "PR/TT spyware captures electronic impulses that identify the originating source of the communication by capturing routing, address, or signaling information." *Id.* ¶ 16. Plaintiff then alleges that Hanesbrands "has embedded at least one PR/TT on its website to capture electronic impulses *originating from the site to identify the source of the communication*, including the identity and

9

geolocation of every website visitor." *Id.* ¶ 18 (emphasis added). This tracing of the "source of the communication" Plaintiff complains of is a euphemism for Hanesbrands's website interfacing with Plaintiff's Internet-connected device through an IP address—something Plaintiff explains earlier in the Complaint. *See id.* ¶ 9 ("Every device connected to the internet has a unique IP address, typically consisting of a sequence of numbers. *An IP address is used to route information between devices*." (cleaned up & emphasis added)); *see also id.* ¶ 10.

Said differently, Plaintiff alleges that Hanesbrands's website contains either a pen register or a trap and trace device that "capture[s]" the electronic impulses originating *from* the Maidenform Website to identify the source of the device pinging Hanesbrands's website for a response. According to Plaintiff's allegations, then, Hanesbrands's website is providing the "electronic communication" that a pen register or trap and trace device is prohibited from recording. This makes Hanesbrands "[a] provider of electronic . . . communication service" for the purposes of § 638.51(b).

But it would be impossible for Hanesbrands to provide that electronic communication service without knowing *who* was requesting access to that service, what they were requesting (*e.g.*, the images, links, text, and sounds that comprise a website), and where they wanted it delivered (their device). The use of the IP address answers all those questions because "[a]n IP address is used to route information between devices" on the internet. Compl. ¶ 9 (cleaned up). As courts have repeatedly held, *see supra*, from its genesis, that's how the Internet was designed to work. Therefore, logging the IP address is necessary "[t]o operate" Hanesbrands's "electronic communication service," Cal. Pen. Code § 638.51(b). As such, Hanesbrands is exempted from the statute as a provider of an electronic communication service who is using the allegedly proscribed devices to "operate" or "maintain" that service. Cal. Pen. Code § 638.51(b).

*Second*, this doesn't prohibit the use of these devices "[i]f the consent of the user of that service has been obtained." *Id.* § 638.51(b)(1). Every person using a device to

access a website necessarily consents to the website logging certain, necessary information about the device so that the website can respond with the information the device requested. This is done via IP addresses. *See* Compl. ¶ 9 ("An IP address is used to route information between devices." (cleaned up)). An IP address is how the website knows what to deliver and where to deliver it. *See Heckenkamp*, 482 F.3d at 1144 ("An IP address is a standard way of identifying a computer that is connected to the Internet.").

Here, Plaintiff purposefully visited the Maidenform Website to "test" it out for purposes of this litigation. Plaintiff alleges that she is a "consumer privacy advocate who works as a 'tester.'" Compl. ¶ 4. As part of those efforts, Plaintiff "recently visited" the Maidenform Website. *Id.* at 3. This is where she claims that Hanesbrands deployed its pen register or trap and trace "beacon." *Id.* ¶ 19. But all this spotlights Plaintiff's voluntary request of information from the website, which could not fulfill that request without knowing where to send that information. As such, there can be no question that Plaintiff consented, and, therefore, even if Plaintiff had plausibly alleged the existence of a pen register or trap and trace spyware, her claim would clearly fall within the statute's exception.

### iv. Plaintiff Does Not Have a Private Right of Action Under Section 638.51 or Section 637.2.

Section 638.51, like its federal counterpart (18 U.S.C. § 3121), does not enumerate a private right of action. *See Wallace v. Cellco P'ship*, No. 14-cv-8052, 2015 WL 13908106, at *7 (C.D. Cal. Feb. 9, 2015) ("[T]he Court finds no statutory basis for a private right of action under [18 U.S.C. § 3121]."). Instead, the statue only imposes criminal penalties. *See* CAL. PEN. CODE § 638.51(c). As this Court recognized, "[g]enerally, criminal statutes do not create private rights of action, and violations of criminal statutes cannot serve as a basis for civil liability." *Wallace*, 2015 WL 13908106, at *7; *see also Vasquez v. Solo 1 Kustoms, Inc.*, 27 Cal. App. 5th 84, 91 (2018) ("The Legislature's intention to create a private cause of action must be

11

expressly stated or strongly implied in the statutory language or legislative history."). Thus, "when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 133 (1997). But Plaintiff has not met that burden.

Instead, Plaintiff alleges the *legal conclusion* that the "CIPA provides for a private right of action and imposes civil liability and statutory penalties[.]" Compl. ¶ 23. She cites only Section 638.50(c)—which is the definition of a "trap and trace device"—and to *Greenley*, 2023 WL 4833466, at *15–16. *See* Compl. ¶ 23. But *Greenley* does not discuss whether Section 638.51 confers a private right of action. *See generally Greenley,* 2023 WL 4833466. There is, however, one area worth discussion.

In the last allegation of the Complaint, and in a perfunctory manner, Plaintiff alleges that she is "entitled to statutory damages of $5,000," Compl. ¶ 31, and she cites Section 637.2(a)(1). Section 637.2(a) says that "[a]ny person who has been *injured* by a violation of this chapter may bring an action against the person who committed the violation[.]" CAL. PEN. CODE § 637.2(a) (emphasis added). Two problems. *First*, this Court has not interpreted Section 637.2 as a *carte blanche* grant of a private right of action for *all* CIPA violations. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) ("Yoon has, however, alleged sufficient facts to make out a CIPA § 635(a) [another CIPA section] claim against Quantum Metric *if she has a private right of action. She does not*." (emphasis added); *see also ibid.* ("The parties do not cite, and the Court could not find, authority on whether § 637.2(a) provides a private right of action for claims arising under § 635."); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 523 (C.D. Cal. 2021) ("agree[ing]" that "construal of § 637.2 as providing a private right of action for a violation of § 635 would be unconstitutional, as it would provide Plaintiff a cause of action without suffering an injury-in-fact").

1       *Second*, the specific prevails over the general. *See* ANTONIN SCALIA & BRYAN A.

2 GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 183 (2012) ("If there

3 is a conflict between a general provision and a specific provision, the specific provision

4 prevails[.]"). Section 638.51(c) is the *specific* grant of relief (*i.e.*, fines, imprisonment,

5 or both) for violations of Section 638.51(a). And Section 637.2(a) is, at best, a *general*

6 grant of a private right of action in the CIPA. Thus, Section 638.51(c) works as the

7 *exception* to the general grant of potential remedies. *Ibid.* ("Under this canon, the

8 specific provision is treated as an exception to the general rule.").

9       Courts frequently rely on the general/specific canon, and similar, to resolve

10 statutory conflicts. *See, e.g.*, *Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 460–

11 61 (E.D. Tex. 2020) ("Plaintiffs conclude, therefore, that HAVA must confer a private

12 right of action in the absence of further statutory instruction. But the reality is quite the

13 opposite. . . . Considering the specificity with which Congress detailed HAVA's

14 enforcement subchapter, it is difficult to see how any evidence Plaintiffs have offered

15 serves to counteract *Sandoval*'s principle that 'express provision of one method of

16 enforcing a substantive rule suggests that Congress intended to preclude others.'"

17 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)); *see also Int'l Refugee*

18 *Assistance Project v. Trump*, 883 F.3d 233, 318 (4th Cir. 2018) (relying on the

19 general/specific canon to find that a statute operated as a "more specific bar on

20 nationality-based discrimination in the issuance of visas" over an earlier statute that

21 only "articulated general boundaries of the President's authority to suspend the entry of

22 aliens"); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)

23 ("The general/specific canon is perhaps most frequently applied to statutes in which a

24 general permission or prohibition is contradicted by a specific prohibition or

25 permission. To eliminate the contradiction, the specific provision is construed as an

26 exception to the general one.").

27

28

DEFENDANT HANESBRANDS INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

2

### v. Even if Section 637.2 Conferred a Private Right of Action, Plaintiff's Lack of Injury Means She Lacks the Requisite Statutory Standing to Bring this Claim.

3

4

"Statutory standing can be established by pleading a violation of a right conferred by statute so long as the plaintiff alleges 'a distinct and palpable injury to himself[.]'" *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 314CV00751GPCDHB, 2016 WL 3543699, at *5 (S.D. Cal. June 29, 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

5

6

7

8

The first step in assessing statutory standing is to "consider the exact act Plaintiff alleges" the defendant committed and "whether such act falls within" the allegedly violated statute. *Saleh*, 562 F. Supp. at 521. But Plaintiff deliberately omits the factual allegations necessary to address this first question and instead suggests offering them upon a "*reasonable request*." *See* Compl. ¶ 18 ("To deter 'copycat' litigation, Plaintiff does not specific the beacon by name in this Complaint; Plaintiff will, however, provide a fulsome explanation to Defendant upon reasonable request." (emphasis added)). But even if Plaintiff had satisfied this first step, she still lacks statutory standing, because she fails at the next step: demonstrating an "injury."

9

10

11

12

13

14

15

16

17

Without conceding that Section 637.2 confers a private right of action, Plaintiff fails to show how she satisfies this section. Section 637.2 only allows a private right of action where a person "has been *injured* by a violation of this chapter," CAL. PEN. CODE § 637.3 (emphasis added). But Plaintiff's complaint is devoid of any factual allegations that demonstrate a real injury to her. *See generally* Compl. In a single, two-line paragraph Plaintiff alleges—without the support of corroborating factual allegations— *two* theories of injury. *First*, that she suffered "an economic injury," Compl. ¶ 29, and, *second*, that she suffered "an intangible injury to [her] dignity caused by the violation of Plaintiff's right to privacy," *ibid.* Neither allegation demonstrates an injury in fact.

18

19

20

21

22

23

24

25

26

*First*, "an economic injury," Compl. ¶ 29, it's true, can be among the quintessential of injuries. *See, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[C]ertain harms readily qualify as concrete injuries under Article III. The most

27

28

14

obvious are traditional tangible harms such as physical harms and monetary harms."). But other than saying that she suffered "an economic injury," Plaintiff does nothing to support this allegation. *See generally* Compl. Plaintiff, for example, never alleges how or when or by how much she was monetarily harmed. *See generally ibid.* Other than using "economic injury" as buzzwords, Plaintiff never alleges an injury at all. This threadbare conclusion fails under Ninth Circuit precedent. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 (9th Cir. 2020) ("Where, as here, a case is at the pleading stage, the plaintiff *must* clearly allege *facts* demonstrating each element of standing." (cleaned up & emphases added)); *see also Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (A court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." (cleaned up)).

*Second*, the "intangible injury to Plaintiff's *dignity* caused by the violation of Plaintiff's right to privacy," Compl. ¶ 29 (emphasis added), suffers from the same lack of support the economic theory of harm suffered. Plaintiff never says why, how, or by how much her dignity has depreciated. Again, it's true, that "[v]arious intangible harms can also be concrete." *TransUnion*, 594 U.S. at 425. Some of these "include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *Ibid.* "Courts, however, 'make their decisions regarding whether a plaintiff has stated a legally protectable privacy based on the *nature of the information* at issue.'" *Mikulsky v. Noom, Inc.*, 2023 WL 4567096 (S.D. Cal. July 17, 2023), at *5 (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) (emphasis added)); *see also Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1271 n.17 (9th Cir. 1998) ("Under California law, a legally recognizable privacy interest arises from the sort of information revealed[.]").

Plaintiff never alleges "the nature" of information she thinks Hanesbrands accessed or recorded in any readily discernable manner. *See generally* Complaint. And,

as discussed earlier, it is no response to say that what Hanesbrands recorded was her IP address because there's no legally protected privacy interest in an IP address. The failure to allege the "specific personal information she disclosed that implicates a protectable privacy interest," *Mikulsky*, 2023 WL 4567096, at *5, warrants dismissal for lack of standing.

And this makes sense. Section 638.51 is clear that when a person uses a pen register or trap and trace device, they've violated California *criminal* law—agnostic to whether anyone was harmed as a result. But for *civil* liability, the California legislature determined that only an *injured* person will have standing to sue that person violating that law. Absent a nexus to injury, *anyone* in California could sue that person for using a pen register. But that would lead to absurd consequences. Hence the necessity of the limiting principle: only someone who "has been *injured* by a violation of this chapter may bring an action against the person who committed the violation[.]" CAL. PEN. CODE § 637.2 (emphasis added).

In *Saleh*, this Court addressed the interplay between § 672.2 and § 635, another similar, criminal section in the CIPA proscribing the manufacturing, sale, or possession of eavesdropping devices. *See generally* CAL. PEN. CODE § 635. While the Court found that the plaintiff had alleged that the defendant might have plausibly "possessed" an eavesdropping device, relying on *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124 (11th Cir. 2004), the Court ultimately held that "mere possession does not lead to actual injury, but only *potential* injury[.]" *Saleh*, 562 F. Supp. 3d at 523 (emphasis added). So, the Court dismissed the plaintiff's complaint for want of injury. The same is appropriate here because Plaintiff has not linked Hanesbrands's alleged *use* of a pen register or trap and trace device to a real, "non-potential injury" such that she can rely on § 637.2's remedial provisions for "injured" parties.

As such, Plaintiff fails to allege how the "use" or "install[ation]" of one of these devices puts her in the set of *injured* people endowed with a right to sue. The absence of injury is the absence of statutory standing, warranting dismissal of her claim.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, Hanesbrands respectfully requests the Court to grant its motion to dismiss.

Respectfully submitted,

SIDLEY AUSTIN LLP

Dated:  March 6, 2024               By: */s/ Amy P. Lally*
                                        Amy P. Lally
                                        Anna Tutundjian

                                        *Attorneys for Defendant*
                                        *Hanesbrands Inc.*

DEFENDANT HANESBRANDS INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Defendant Hanesbrands Inc., certifies

3

that this brief contains 5,586 words, which complies with the word limit of L.R. 11-

4

6.1, as well as this Court's Standing Order.

5

6

Dated:  March 6, 2024                          */s/ Amy P. Lally*
                                                        Amy P. Lally

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HANESBRANDS INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT