**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MILTITA CASILLAS,

Plaintiff,

v.

HANESBRANDS INC., a Maryland corporation d/b/a WWW.MAIDENFORM.COM,

Defendant.

Case No. 2:24-cv-01641-RGK-JC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

[Request for Judicial Notice filed concurrently herewith; [Proposed] Order lodged concurrently herewith]

Date: April 8, 2024
Time: 9:00 a.m.
Courtroom: 850
Judge: Hon. R. Gary Klausner

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The Complaint Plausibly Alleges that Defendant Violated Section 638.51 of the California Penal Code. ........ 1

1. The Complaint Alleges a Legally Protected Privacy Interest Because an IP Address Is Private Information in Which Californians Have a Reasonable Expectation of Privacy. ........ 1

2. Section 638.51 Applies to Software. ........ 5

a. Defendant Ignores that the Pen Register Definition Under State Law Tracks the Federal Definition Amended by the Patriot Act. ........ 5

b. The Legislative History Strongly Supports Plaintiff's Position that a Pen Register Can Include Electronic Software. ........ 7

c. The Complaint Adequately Alleges Defendant's Use of a "Pen Register" on Its Website. ........ 9

3. Defendant's Consent Argument Is Premature to Decide. ........ 9

4. Defendant's Invocation of Section 638.51(b)(1) Is Not a Basis to Dismiss the Complaint. ........ 11

5. A Violation of Section 638.51 of the Penal Code Is Actionable as a Civil Claim Under Section 637.2 of the Penal Code. ........ 15

6. The Court Should Follow California Precedent Construing Section 637.2 of the Penal Code as Providing a Statutory Damages Remedy Without Having to Prove Actual Damages. ........ 15

B. If a Curable Defect Remains, Leave to Amend Should Be Granted. ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999 (C.D. Cal. 2014) (Snyder, J.) ....16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....9, 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....9, 10

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ....14

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) (Koh, J.) ....9, 10, 11

*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) ....5

*Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009) ....1, 2, 3

*Casillas v. Cypress Ins. Co.*, 770 Fed. Appx. 329 (9th Cir. 2019) ....12

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021) ....13

*Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) ....13

*D'Angelo v. Penny Opco, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) (Bashant, J.) ....16

*Garcia v. City of Laredo, Tex.*, 702 F.3d 788 (5th Cir. 2012) ....12

*Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985 (W.D. Wash. 2022) ....13

*Greenley v. Kochava, Inc.*, - F. Supp. 3d. -, 2023 WL 4833466, at *11 (S.D. Cal. July 27, 2023) (Bashant, J.) ....................................................1, 15

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019).........................................................11

*In re Google*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.)...................................11

*In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022).........................................................2

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012).......................................................13

*In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)..........................................14

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014)............................................................14

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201 (D.D.C. 2018).........................................................13

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) (Breyer, J.)...........................................10

*Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) (Staton, J.).................................15

*Leitner v. Morsovillo*, 2022 WL 7074322 (W.D. Mo. Oct. 12, 2022) .................................................13

*Licea v. American Eagle Outfitters, Inc.*, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023)...................................................10

*Licea v. Cinmar, LLC*, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023)...................................................10

*Lopez v. Apple*, Inc., 519 F. Supp. 3d 672 (N.D. Cal. 2021).......................................................13

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ......................................................................16

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013)........................................1, 2, 3

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ..........10

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) (Koh, J.)....................................10

*Montantes v. Inventure Foods*,
2014 WL 3305578 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) ................................9

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ..........................................................................1

*Quon v. Arch Wireless Operating Co., Inc.*,
529 F.3d 892 (9th Cir. 2008), *rev'd on other grounds sub nom*. *City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010) .................................................12, 3

*Spacone v. Sanford, LP*,
2017 WL 6888497 (C.D. Cal. May 11, 2017) (O'Connell, J.)...........................11

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004) ........................................................................12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007) .......................................................................3, 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 3707181 (N.D. Cal. May 24, 2023)....................................................10

*Webster v. Fall*,
266 U.S. 507 (1925).............................................................................................3

*Wesch v. Yodlee, Inc.*,
2021 WL 6206644 (N.D. Cal. July 19, 2021) ..................................................13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.)................................10, 11

**California Cases**

*Friddle v. Epstein*,
16 Cal. App. 4th 1649 (1993) ..........................................................................16

*Ion Equipment Corp. v. Nelson*,
110 Cal. App. 3d 868 (1980) ....................16

**Other State Cases**

*People v. Seymour*,
536 P.3d 1260 (Colo. 2023) ....................5

**Federal Statutes**

18 U.S.C.
§ 2510 ....................12
§ 2510(15) ....................12
§ 2701(a) ....................12, 14
§ 2701(c)(1) ....................14
§ 2701 *et seq.* ....................12
§ 2702(a)(1) ....................12
§ 3127 ....................12
§ 3127(3) ....................6, 7, 12

Electronic Communications Privacy Act of 1986
§ 101, Pub. L. No. 99–508, 100 Stat 1848 (1986) ....................12

Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351,
Title III, 82 Stat. 197 (1968) ....................12

Pen Register Act .................... *passim*

Stored Communications Act .................... 12, 13, 14

USA Patriot Act of 2001, Pub. L. No. 107–56
§ 216, 115 Stat. 272 (2001) ....................1, 5, 6, 7

Wiretap Act ....................12, 14

**California Statutes**

Business and Professions Code
§ 17535 ....................15
§ 17600 *et seq.* ....................15
Automatic Renewal Law ....................15
Division 7, Part 3, Chapter 1, Article 9 ....................15

Civil Code

§ 1798.100 *et seq.* ....................2
§ 1798.100(a) ....................3
§ 1798.100(c) ....................3
§ 1798.105(a) ....................3
§ 1798.120(a) ....................3
§ 1798.140....................2
§ 1798.140(v)(1)(A)....................2
California Consumer Privacy Act of 2018. ....................2, 3, 4

Penal Code

§ 629.51....................8
§ 629.51(a) ....................7
§ 629.51(a)(2)....................7, 8
§ 630 *et seq* ....................14
§ 631....................10
§ 637.2....................15, 16
§ 637.2(a)(1)-(2)....................15
§ 637.2(a) ....................16
§ 637.2(c) ....................16
§ 638.50(a) ....................7
§ 638.50(b) ....................6, 7
§ 638.51.................... *passim*
§ 638.51(a) ....................1, 9
§ 638.51(b) .................... 11, 13, 14
§ 638.51(b)(1) ....................11
§ 638.52....................1
§ 638.53....................1
§ 1546(d) ....................2
§ 1546(h) ....................2
§ 1546.1(a)(1)....................2
§ 1546.1(b) ....................2
§ 1546.4(a) ....................2
Part 1 Title 15 Chapter 1.5....................15
California Electronic Communications Privacy Act ....................2, 4
California Invasion of Privacy Act....................14, 16
Senate Bill 1428 (2009-2010 Regular Session)....................8

**Federal Rules**

Federal Rule of Civil Procedure

Rule 8 ....................9

Rule 9 .......................................................................................................9
Rule 9(b) ....................................................................................................9
Rule 12(b)(6)........................................................................................9, 10
Rule 15(a)(2) ............................................................................................16

**Other Authorities**

147 Cong. Rec. H7159-03, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner).......................................................................................6, 7

147 Cong. Rec. S10990-02, 2001 WL 1297566 (Oct. 25, 2001) (Sen. Leahy) .........................................................................................................6

Assembly Committee on Public Safety Bill Analysis of June 21, 2010 for Senate Bill 1428 (2009-2010 Regular Session)................................................8

House Report No. 107-236(I) (Oct. 11, 2001).................................................7

H.R. 2975, 107th Cong. (2001).........................................................................7

H.R. 3162, 107th Cong. (2001).........................................................................7

S. 1510, 107th Cong. (2001) .............................................................................7

S. Rep. No. 99-541, at 14, 1986 WL 31929, 1986 U.S.C.C.A.N. 3555, 3568 (Oct. 17, 1986) ...............................................................................13

Senate Committee on Public Safety Bill Analysis of Apr. 12, 2010 for Senate Bill 1428 (2009-2010 Regular Session)................................................8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"Advances in technology can increase the potential for unreasonable intrusions into personal privacy." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019). "In this way, the right is dynamic against new threats to privacy." *Greenley v. Kochava, Inc.*, - F. Supp. 3d. -, 2023 WL 4833466, at *11 (S.D. Cal. July 27, 2023) (Bashant, J.). In 2015, the Legislature enacted section 638.51 of the California Penal Code to prohibit the types of unlawful conduct at issue here. In so doing, the Legislature adopted statutory language patterned after the federal USA Patriot Act of 2001 ("Patriot Act"), Pub. L. No. 107–56, § 216, 115 Stat. 272 (2001), which expanded the scope of the then-existing federal Pen Register Act to cover Internet software technology. Defendant's argument that California's analogue is limited to devices that only obtain telephone numbers is wrong.

## II. ARGUMENT

### A. The Complaint Plausibly Alleges that Defendant Violated Section 638.51 of the California Penal Code.

"California law prohibits the installation of a pen register without first obtaining a court order." *Greenley*, 2023 WL 4833466, at *15 (citing Penal Code § 638.51). Section 638.51 of the Penal Code provides that except for certain exceptions, "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Penal Code § 638.51(a).)

#### 1. The Complaint Alleges a Legally Protected Privacy Interest Because an IP Address Is Private Information in Which Californians Have a Reasonable Expectation of Privacy.

Defendant contends that the Complaint fails to allege any legally protected privacy interest arising from Defendant's use of Plaintiff's IP address to track her web browsing activities. (Def.'s Mem. at 5:1-7:20.) Defendant's reliance upon *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009), and *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *3-*4 (E.D. Mich. Nov. 19, 2013), is misplaced

and unpersuasive.

*Capitol Records* stated, ***without citing any case or statutory authority***, "[T]he Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. If it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Records*, 2009 WL 1664468, at *3. Similarly, *Malibu Media*, relying on *Capitol Records*, stated that the defendant "communicated his IP address as part of the packet his computer sent to IPP," and "[b]ecause the IP address was voluntarily sent, the Pen Register Act cannot prevent [plaintiff's] investigator from recording that information." *Malibu Media*, 2013 WL 12180709, at *4.

Notably, *Capitol Records* and *Malibu Media* were both decided before either the California Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial), or the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a consumer's "personal information," (Cal. Civ. Code § 1798.140(v)(1)(A)), were enacted into California law. The CECPA and CCPA both support the proposition that Californians have a reasonable expectation of privacy in their IP addresses that they use to gain access to the Internet. *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information ***such as plaintiff's IP address***….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Cal. Civ. Code § 1798.140).

In addition, the CCPA, which provides consumers with the right to know when a business is collecting personal information about them, (Cal. Civ. Code § 1798.100(a)), also provides:

> "A business' collection, use, ***retention***, and sharing of a consumer's personal information shall be reasonably necessary and proportionate to achieve the purposes for which the personal information was collected or processed, or for another disclosed purpose that is compatible with the context in which the personal information was collected, and not further processed in a manner that is incompatible with those purposes."

(Cal. Civ. Code § 1798.100(c)) (emphasis added). And, the CCPA provides a consumer with "the right to request that a business ***delete*** any personal information about the consumer which the business has collected from the consumer," (Cal. Civ. Code § 1798.105(a) (emphasis added)), and "the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information," *i.e.*, "the right to opt-out of sale or sharing," (Cal. Civ. Code § 1798.120(a)). If a consumer can exercise such opt-out right after the consumer's personal information has already been collected by a business, then the CCPA indicates the Legislature's intent that businesses cannot ***retain*** personal information like a consumer's IP address in perpetuity if: (i) the retention is not compatible with purposes deemed appropriate by the Legislature; or (ii) a consumer opts-out of such retention.

*Capitol Records* and *Malibu Media* both failed to address the ability of a business to ***delete*** a consumer's IP address from its records and whether a business can or should ***retain*** a consumer's IP address in perpetuity long after a legitimate reason for which it was used by such business is no longer applicable. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record…are not to be considered as having been so decided as to constitute precedents.").

*United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2007), is similarly distinguishable because *Forrester* had no occasion to consider whether an Internet user

has a reasonable expectation of privacy as to the user's IP addresses on the user's devices. And, it was decided in 2008, well before the CECPA and CCPA were enacted into law.

Furthermore, *Forrester* treated the "IP addresses of websites visited," as "unprotected addressing information," 512 F.3d at 510, because the Ninth Circuit viewed the "IP addresses of websites visited," as irrelevant to "know[ing] the particular pages on the websites the person viewed." *Id.* at 510. If the government could "know the particular pages on the websites the person viewed" by learning the "IP addresses of websites visited," then the outcome in *Forrester* may have been different. *Forrester*, 512 F.3d at 510 n.6 ("Surveillance techniques that enable the government to determine not only the IP addresses that a person accesses but also the uniform resource locators ("URL") of the pages visited might be more constitutionally problematic. A URL, unlike an IP address, identifies the particular document within a website that a person viewed and thus reveals much more information about the person's Internet activity. For instance, a surveillance technique that captures IP addresses would show only that a person visited the New York Times' website at http://www.nytimes.com, whereas a technique that captures URLs would also divulge the particular articles the person viewed.").

*Forrester* was decided more than 15 years ago, before the identity resolution industry existed and before tracking software embedded into websites as "cookies" to track the specific webpages visited by Internet users became technically feasible amongst websites.

Although Defendant argues that the Complaint does not allege that Plaintiff's IP address "is unique to her," (Def.'s Mem. at 7:6-17), Defendant's argument begs the question what effect, if any, having a "static" IP address versus a "dynamic" IP address would have on Plaintiff's privacy interest. Does having a "dynamic" IP address for one's devices make it impossible to trace via software tracking devices? Defendant does not answer that question.

Assuming *arguendo* that the IP address assigned to Plaintiff's computerized device used to visit Defendant's website at https://www.maidenform.com (the "Website") is

"dynamic," the Complaint alleges the existence of an identity resolution industry that can be used to identify individual users of the Internet based on the user's IP addresses. (Compl. ¶ 13.) "Associating a dynamic IP address with a particular customer at a given moment makes the task of "discovering the identity of a particular infringer ***more difficult***,…, [t]his requires ISPs … ***to use commercially available or customized software tools***, to correlate the IP address assigned to a computer at a specific moment with the subscriber's account information in order to identify a customer from the IP address…." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 356-57 (D.D.C. 2011) (emphasis added). Thus, associating a dynamic IP address with a particular user at a given moment might make the task of unmasking the identity of a particular user of a website "more difficult," but it does not make such task impossible given "commercially available" software tools, which were recognized as existing well over a decade ago. Indeed, the Colorado Supreme Court recently noted, "Once law enforcement has an IP address, it can easily associate that IP address with an individual." *People v. Seymour*, 536 P.3d 1260, 1272 (Colo. 2023) ("Because the IP address provides such a critical link in the chain of user identification, a reasonable expectation of privacy exists at this stage….").

**2. Section 638.51 Applies to Software.**

Defendant contends that the Complaint fails to plead use of either a "pen register" or "trap and trace device." (Def.'s Mem. at 7:21-9:4.) Defendant implies that a "pen register" is limited to recording the numbers dialed out from a particular telephone line. *Id.* at 8:11-14. Defendant's implicit argument that a "pen register" under section 638.51 does not apply to a website's software collecting IP addresses from visitors' smartphone devices is wrong.

**a. Defendant Ignores that the Pen Register Definition Under State Law Tracks the Federal Definition Amended by the Patriot Act.**

It is beyond dispute that after the events of September 11, 2001, Congress modified the existing Pen Register Act via the Patriot Act to extend its pen register/trap and trace

provisions to apply not just to telephone communications, but also to Internet traffic, as long as they exclude "content". 147 Cong. Rec. S10990-02, S11000, 2001 WL 1297566 (Oct. 25, 2001) (Sen. Leahy) ("The language of the existing statute is hopelessly out of date and speaks of a pen register or trap and trace 'device' being 'attached' to a telephone 'line.' However, the rapid computerization of the telephone system has changed the tracing process. No longer are such functions normally accomplished by physical hardware components attached to telephone lines. Instead, these functions are typically performed by computerized collection and retention of call routing information passing through a communications system."); *id.* at S11006 ("It also ensures that the pen register and trap and trace provisions apply to facilities other than telephone lines (e.g., the Internet)."); *id.* at S11055 (stating the Department of Justice's "goal of making the [pen registers and trap and trace statute and other federal electronic surveillance] statutes technology-neutral; that is, ensuring that the same existing authorities that apply to telephones, for example, are made applicable to computers and use of e-mail on the Internet."); 147 Cong. Rec. H7159-03, H7196, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner) ("It brings the basic building blocks of a criminal investigation, pen registers and trap and trace provisions, into the 21st century to deal with e-mails and Internet communications."); *id.* at H7197 ("Extends the pen/trap provisions so they apply not just to telephone communications but also to Internet traffic, so long as they exclude 'content.'").

As a result, the Patriot Act amended the definition of pen register to insert "dialing, routing, addressing, or signaling information." (18 U.S.C. § 3127(3).) Notably, ***that identical language was enacted into California's analogue***. (Cal. Penal Code § 638.50(b)) ("'Pen register' means a device ***or process*** that records or decodes ***dialing, routing, addressing, or signaling information*** transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. 'Pen register' does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an

incident of billing, for communication services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.") (emphasis added).

In addition, both the Patriot Act's amendment to the "pen register" definition in 18 U.S.C. § 3127(3) and the definition of "Pen register" in Cal. Penal Code § 638.50(b) both added the words "or process" after "device". The legislative history of the Patriot Act indicates that the "pen register" definition was amended "to include an intangible 'process' (such as a software routine) which collects the same information as a physical device." 147 Cong. Rec. H7159-03, H7165, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner); House Report No. 107-236(I), at *60 (Oct. 11, 2001).[1]

Defendant inexplicably ignores that California's version of the definition of pen register is virtually identical in content to the federal definition amended via the Patriot Act. Thus, the plain language of section 638.50(b) reflects an intent of the California Legislature to adopt Congress's expansion of the definition of pen register to include computerized devices connected to the Internet.

**b. The Legislative History Strongly Supports Plaintiff's Position that a Pen Register Can Include Electronic Software.**

Defendant ignores that the Legislature's intent to broadly define the meaning of "electronic communication," which is a crucial term used within the definition of "pen register" in Penal Code § 638.50(b), is clear from relevant legislative history that Defendant has conveniently ignored.

Notably, subdivision (a) of section 638.50 of the Penal Code states that the term "electronic communication" has "the meaning[] set forth in subdivision (a) of Section 629.51." This begs the question as to the legislative history of Cal. Penal Code §

---

[1] House Report No. 107-236(I) was to accompany H.R. 2975, a related bill, which was passed by the House of Representatives on October 12, 2001. Instead of a conference with the Senate on H.R. 2975 (to reconcile differences with S. 1510), the House passed H.R. 3162 on October 24, 2001.

629.51(a)(2), which defines, "Electronic communication".

Senate Bill 1428 (2009-2010 Regular Session), amended California's wiretap law, (Cal. Penal Code § 629.51), to broadly define "electronic communication" as of January 1, 2011, to include modern types of contemporaneous two-way electronic communications instead of the original statute, which referred to "Electronic cellular telephone communication," and "Electronic digital pager communication." (RJN Ex. 1 at 2) ("***The purpose of this bill is to amend the existing wiretap provisions to include the interception of modern types of contemporaneous two-way electronic communications*** ….") (emphasis in original); *id.* at 6 ("This bill … updates California's wiretapping law to include interception of communications by ***e-mail***, ***blackberry***, ***instant messaging*** by phone ***and other forms of contemporaneous two way electronic communication***….Criminals should not simply and trivially be able to move to electronic communications and so easily escape law enforcement's reach.") (emphasis added); *id.* at 7 ("***SB 1428 recognizes the expanding use of electronic communications in the planning of criminal activity*** and ***modernizes our state wiretap law*** so that court-approved interceptions of communication from ***the latest technologies*** are a relevant option for law enforcement investigations.") (emphasis added); *id.* at 9 ("This bill changes the types of equipment that may have an intercept order placed on it to include wire or electronic communication. … ***The change to the types of communications is intended to reflect current and future electronic communications. The intent is to access simultaneous conversations going on with today's technology***.") (emphasis added); (RJN Ex. 2 at 6) ("SB 1428 updates California's wiretap law to cover new forms of technology which are not considered significant factors when the current law was significantly revised in 2001 and 2002. Specifically, the term 'electronic communication' is added.…SB 1428 updates the law by permitting the interception of contemporaneous conversations that are conducted ***by means other than telephone or cell phone calls***.") (emphasis added).

**c. The Complaint Adequately Alleges Defendant's Use of a "Pen Register" on Its Website.**

The Complaint plausibly alleges Defendant's use of software that constitutes a "pen register" within the meaning of sections 638.50(b) and 638.51(a) of the California Penal Code. (Compl. ¶¶ 1, 18-21, 24, 28; *id.* at 2:2-23.)

Although Defendant implies that Plaintiff must plead a prima facie claim, that is not, however, the applicable legal standard on the instant Motion. "While *Twombly* and *Iqbal* enhanced the standard of Rule 8 to require that complaints set forth a claim for relief that is plausible on its face, ***it stopped short of requiring complaints to set forth a prima facie case***." *Montantes v. Inventure Foods*, 2014 WL 3305578, at *6 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) (emphasis added). "[A] complaint need not necessarily set forth facts supporting every element of a claim in order to survive a motion to dismiss under Rule 12(b)(6)." *Id.* *Montantes* engages in a comprehensive analysis of case law to hold that the Ninth Circuit has "pulled away from a strict rule that a complaint must plead all elements of the claim." *Id.* at *7.

The Court should not apply a heightened pleading standard under Rule 9(b), which the Supreme Court has rejected for ordinary cases.[2]

**3. Defendant's Consent Argument Is Premature to Decide.**

Defendant contends that Plaintiff voluntarily sent her IP address on her device to Defendant. (Def.'s Mem. at 10:27-11:17.) In essence, Defendant is arguing that Plaintiff consented to providing the IP address on her device for Defendant to freely use for all time. Consent, however, is a defense to privacy-related claims, and, as the party seeking the benefit of the exception, it is the defendant's burden to prove consent. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) (Koh, J.) ("Consent is a defense to Plaintiffs' claims.") (citations omitted). "'[A]s 'the party seeking the benefit of the

---

[2] In addressing its plausibility legal standard on a Rule 12(b)(6) motion, the Supreme Court noted that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]" *Twombly*, 550 U.S. at 569 n.14.

exception,' it is [defendant's] burden to prove consent.'" *Id.* (quoting *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (Koh, J.)).

In any event, the Complaint affirmatively alleges in regards to the section 638.51 claim that "Defendant did not obtain Plaintiff's knowing and informed consent to [use pen register software to access Plaintiff's device and install tracking code on it in violation of California law]." (Compl. ¶ 25.) Thus, the lack of Plaintiff's consent to Defendant's wrongdoing has been affirmatively alleged, which the Court is required to take as true for purposes of deciding the instant Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

The Court should follow the numerous similar decisions that have rejected deciding the issue of consent as a matter of law at the pleadings stage in privacy-related actions. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *3 (N.D. Cal. May 24, 2023); *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *6 (C.D. Cal. Mar. 7, 2023) ("For purposes of Rule 12(b)(6), Plaintiffs sufficiently plead that they did not consent to the recording of their conversations with Defendant."); *Licea v. American Eagle Outfitters, Inc.*, 2023 WL 2469630, at *6 (C.D. Cal. Mar. 7, 2023) (same); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ("Defendant's fact-based defense of implied or express consent, which is not apparent on the face of the complaint, is unavailing at the motion to dismiss stage."); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (Breyer, J.) ("implied consent does not provide a basis for dismissal of the Section 631 claim … at this stage"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080-81 (C.D. Cal. 2021) (Holcomb, J.) (finding that plaintiff sufficiently pleaded lack of consent to third party software provider's participation in website conversation on Rule 12(b)(6) motion despite defendant website operator's

reliance on its online privacy policy).

"That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent." *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (emphasis in original). "The disclosures must have only one plausible interpretation for a finding of consent." *Brown*, 525 F. Supp. 3d at 1063. "[I]f a reasonable … user could have plausibly interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)." *Id.* (quoting *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019)). Here, Defendant is not even relying upon *any* contract language to argue consent.

**4. Defendant's Invocation of Section 638.51(b)(1) Is Not a Basis to Dismiss the Complaint.**

Defendant relies upon paragraph (1) of subdivision (b) of section 638.51 of the Penal Code, which provides as follows:

> "A ***provider of electronic*** or wire ***communication service*** may use a pen register or a trap and trace device for any of the following purposes:
>
> (1) To ***operate***, ***maintain***, and test a wire or electronic communication service."

(Cal. Penal Code § 638.51(b)(1) (emphasis added).)

As an initial matter, the structure and language of section 638.51 indicate that subdivision (b) sets forth various safe harbor provisions that constitute affirmative defenses as opposed to additional pleading elements. *Cf. Spacone v. Sanford, LP*, 2017 WL 6888497, at *7 n.8 (C.D. Cal. May 11, 2017) (O'Connell, J.).

Assuming *arguendo* that Plaintiff has the burden of pleading and proving the lack of applicability of any portion of subdivision (b), the Court should reasonably infer from the Complaint's allegation that Defendant is not "[a] provider of electronic or wire communication service" based the allegation describing Defendant as a "conglomerate that markets undergarments and related products via its website…." (Compl. ¶ 5.)

On October 21, 1986, Congress enacted the Electronic Communications Privacy Act of 1986 ("ECPA"), § 101, Pub. L. No. 99–508, 100 Stat 1848 (1986), which amended Title III of the Omnibus Crime Control and Safe Street Act of 1968 ("Wiretap Act"), Pub. L. No. 90-351, 82 Stat. 197 (1968), to add what is commonly referred to as the "Stored Communications Act" ("SCA"), 18 U.S.C. § 2701 *et seq.*[3] The ECPA defines "electronic communication service" ("ECS") to mean "any service which provides to users thereof the ability ***to send or receive wire or electronic communications***[.]" 18 U.S.C. § 2510(15) (emphasis added). Notably, the federal Pen Register Act's definition of an ECS is identical. 18 U.S.C. § 3127 ("the terms 'wire communication', 'electronic communication', '***electronic communication service***', and 'contents' have the meanings set forth for such terms in section 2510 of this title") (emphasis added). The federal Pen Register Act states in relevant part that the term "pen register" "does not include any device or process used by a provider or customer of a wire or ***electronic communication service*** for billing, or recording as an incident to billing, ***for communications services provided by such provider***…." 18 U.S.C. § 3127(3) (emphasis added).

"Courts have interpreted the statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services." *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012); *Casillas v. Cypress Ins. Co.*, 770 Fed. Appx. 329, 330 (9th Cir. 2019) ("websites and services that permit users to communicate directly with one another are considered ECS providers") (citing *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902-03 (9th Cir. 2008) (holding that wireless communications provider of text-messaging pager services is ECS provider) (noting that "provider of e-mail services" is "undisputedly" an ECS provider) (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004)), *rev'd*

[3] The SCA provides a private right of action against anyone who: "(1) intentionally accesses without authorization a facility through which an ***electronic communication service*** is provided; or (2) initially exceeds an authorization to access that facility ... while it is in electronic storage in such system." 18 U.S.C. § 2701(a) (emphasis added). The SCA also prohibits a person or entity providing an "electronic communication service" to the public from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

*on other grounds sub nom. City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010)); *Lopez v. Apple*, Inc., 519 F. Supp. 3d 672, 686 (N.D. Cal. 2021) ("facilities that *provide* an electronic communication service" include "an email provider's servers or an ISP") (emphasis in original); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012) ("[U]ncontroversial examples of facilities that provide electronic communications services" include "the computer systems of an email provider, a bulletin board system, or an ISP."); S. Rep. No. 99-541, at 14, 1986 WL 31929, 1986 U.S.C.C.A.N. 3555, 3568 (Oct. 17, 1986) ("Existing telephone companies and electronic mail companies are providers of electronic communication services.").

Defendant is not an ECS provider. Defendant is not a provider of Internet access including e-mail services, wireless cellular telephone communications, or text-messaging services. Defendant does not serve as a conduit for the transmission of electronic communications from one user to another. Federal courts have rejected construing an ECS broadly to cover merely "sending information to servers" "because it would expand 'electronic communication service' to ***all online services*** and thus render the term meaningless." *Lopez v. Apple*, Inc., 519 F. Supp. 3d 672, 687 (N.D. Cal. 2021) (emphasis added); *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003-04 (W.D. Wash. 2022); *Leitner v. Morsovillo*, 2022 WL 7074322, at *4 (W.D. Mo. Oct. 12, 2022) ("Many courts have held that 'companies that provide traditional products and services over the Internet, as opposed to Internet access itself, are not 'electronic communication service' providers within the meaning of' the SCA."); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 490 (N.D. Cal. 2021) ("The fact that an entity communicates electronically with its customers does not mean that it 'provides an [ECS]'"); *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *3 (N.D. Cal. July 19, 2021); *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 210 (D.D.C. 2018); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (holding that Amazon does not qualify as an ECS).

Given that section 638.51 was patterned after the federal Pen Register Act, the "provider of electronic … communication service" in section 638.51(b) should be

similarly defined narrowly to exclude Defendant. Federal courts decisions have construed the statutory language of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, consistently with the Wiretap's Act's construction. *See, e.g., Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("'The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.'") (citation omitted); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (Staton, J.).

Finally, assuming *arguendo* that Defendant is a "provider of electronic…communication service" under section 638.51(b), the Complaint should be broadly construed to allege that Defendant is not using its pen register software "[t]o operate" or "maintain" its purported "electronic … communication service." Notably, the Complaint alleges that Defendant accessed "visitors' devices, installs tracking spyware, and then monitors and reports visitors' online habits ***after*** they leave the Website." (Compl. at 2:2-4) (emphasis in original). Installing tracking spyware that monitors and reports on visitors' online habits after they leave the Website is surely not necessary or comport with industry standard in order to communicate with Plaintiff's computer device. To the extent that the Court would like such allegation to be made more explicit than it already is, leave to amend should be granted.

Finally, a comparison between section 638.51 and a federal statute that provides for immunity to liability to ECS providers for accessing content on their own servers shows that section 638.51 provides no such immunity to Defendant. Notably, the "SCA grants immunity to 18 U.S.C. § 2701(a) claims to [ECS] providers … ***for accessing content on their own servers***." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026-27 (N.D. Cal. 2014) (emphasis added); 18 U.S.C. § 2701(c)(1) ("Subsection (a) of this section does not apply with respect to conduct authorized—(1) by the person or entity providing a wire or electronic communications service."). Unlike the SCA, section 638.51 does not contain an identical or similar immunity provision for a ECS provider. The SCA's safe harbor for a ECS provider to access content on its own servers does not apply to section 638.51.

**5. A Violation of Section 638.51 of the Penal Code Is Actionable as a Civil Claim Under Section 637.2 of the Penal Code.**

Defendant's argument that violations of section 638.51 can only result in criminal liability only, (Def.'s Mem. at 11:18-13:26), is wrong. *Greenley*, 2023 WL 4833466, at *15 ("CIPA extends ***civil liability*** to the installation of a pen register without a court order.") (emphasis added). As *Greenley* noted, "the California legislature does not limit its prohibition on installing pen registers to law enforcement." *Id.* (citations omitted).

Also, the Legislature's 2015 placement of section 638.51 in Chapter 1.5 of Title 15 of Part 1 of the Penal Code is crucial because it is within the exact same chapter in which section 637.2 of the Penal Code resides. Subdivision (a) of section 637.2 of the Penal Code provides:

> "Any person who has been injured by a violation of ***this chapter*** may bring an action against the person who committed the violation for the greater of the following amounts:
>
> (1) Five thousand dollars ($5,000) per violation.
>
> (2) Three times the amount of actual damages, if any, sustained by the plaintiff."

(Cal. Penal Code § 637.2(a)(1)-(2) (emphasis added).) Section 637.2, which was originally enacted in 1967, has existed for many decades. The 2015 Legislature presumably made a deliberate choice in adding section 638.51 to Chapter 1.5. The Legislature surely had to have known that by doing so, it would enable persons injured by a violation of section 638.51 to obtain civil remedies via a civil action. *Cf. Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *6 (C.D. Cal. Apr. 14, 2016) (Staton, J.) ("The California Legislature intentionally placed [California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600 *et seq*.,] within the same chapter as § 17535, and Article 9 of this chapter—which contains the ARL—declares certain conduct related to automatic renewal or continuous service offers to be unlawful.").

**6. The Court Should Follow California Precedent Construing Section 637.2 of the Penal Code as Providing a Statutory Damages Remedy**

**Without Having to Prove Actual Damages.**

Although Defendant argues that Plaintiff lacks statutory standing because Plaintiff has allegedly not pled the existence of an injury suffered as a result of Defendant's alleged wrongdoing, (Def.'s Mem. at 14:1-16:28), Defendant ignores California precedent holding that ***any*** privacy violation is an affront to dignity. *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("Any invasion of privacy involves an affront to human dignity"). Defendant also ignores that the statutory damages remedy in California Penal Code § 637.2(a) is available regardless of actual damages. (Cal. Penal Code § 637.2(c)) ("It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, ***actual damages***.") (emphasis added); *Friddle*, 16 Cal. App. 4th at 1661 (rejecting argument "that section 637.2 does not kick in until actual damages begin to be incurred") ("The right to recover this statutory minimum accrued at the moment the [CIPA] was violated."); *Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 882 (1980) ("actual damages are not a necessary prerequisite to an action pursuant to section 637.2"). Thus, the California Legislature intended to deter any CIPA violations by omitting an actual damages requirement for CIPA violations. *D'Angelo v. Penny Opco, LLC*, 2023 WL 7006793, at *4 (S.D. Cal. Oct. 24, 2023) (Bashant, J.) ("The California legislature has created statutory damages for each violation of CIPA, with 'no separate showing of injury aside from a violation of the privacy rights protected by CIPA' required.") (quoting *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1018 (C.D. Cal. 2014) (Snyder, J.)).

**B. If a Curable Defect Remains, Leave to Amend Should Be Granted.**

If the Court is inclined to grant the Motion, this Court should grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); Fed. R. Civ. P. Rule 15(a)(2).

Dated: March 18, 2024

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,591 words, which complies with the word limit and page limit of the Court's Standing Order Regarding Newly Assigned Cases. (Doc. 10 at 3:26-4:3.)

Dated: March 18, 2024

*/s/ Scott J. Ferrell*
Scott J. Ferrell