Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Anna Tutundjian (SBN 309969)
Atutundjian@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant*
*Hanesbrands Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILTITA CASILLAS, an individual<br><br>Plaintiff,<br><br>vs.<br><br>HANESBRANDS INC., a Maryland corporation d/b/a WWW.MAIDENFORM.COM,<br><br>Defendant. | Case No. 2:24-cv-01641-RGK (JCx)<br><br>Assigned to: Hon. R. Gary Klausner<br><br>**DEFENDANT HANESBRANDS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Complaint filed: January 18, 2024 |

## I. INTRODUCTION

Plaintiff tries to allege that Hanesbrands' collection of her IP address—data she voluntarily provided to www.maidenform.com ("the Maidenform Website") and any other public website that she's accessed on the Internet—violates the California Penal Code's prohibition on using a "pen register" or "trap and trace device." Cal. Penal Code § 638.51(a). But under Plaintiff's interpretation of the statute, ***every*** website would violate the California Invasion of Privacy Act, an absurdity that the California State Legislature could not have intended. "[*S*]*tandard computer operations require recording IP addresses* so parties can communicate with one another over the Internet." (quoting *Capitol Records Inc. v. Thomas-Rasset*, No. CIV-06-1497(MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (emphasis added)); *see also* Hanesbrands Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint [Dkt. 12] ("Motion to Dismiss") at 11. Plaintiff's boundless application of Section 638.51 defies commonsense and the plain meaning of the statute. Her claims should be dismissed and leave to amend denied.

## II. ARGUMENT

### A. Section 638.51 Does Not Apply to Hanesbrands' Collection of IP Addresses

As Hanesbrands showed with ample case law in its Motion (Dkt. 12 at 11-13), if Section 638.51 applied to the collection of IP addresses by the direct recipient of an online communication (like Hanesbrands), "then the Internet could not function because *standard computer operations* ***require*** *recording IP addresses so parties can communicate with one another over the Internet*." *Capitol Records*, 2009 WL 1664468, at *3 (emphasis added). Here, like in *Capitol Records* and *Malibu Media*, Plaintiff's "IP address was voluntarily sent" and automatically logged by Hanesbrands when Plaintiff accessed the Website. *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013). Indeed, since websites like Hanesbrands' "***necessarily*** *capture such data in their RAM[] to operate the website*," "the collection

of incoming IP addresses by [Hanesbrands] is exempt from" Section 638.51. *Columbia Pictures Indus. v. Bunnell*, No. 06-cv-01093, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (emphasis added).

As a red herring, Plaintiff points to California's Electronic Communications Privacy Act, Cal. Penal Code § 1546 et seq. ("ECPA") and the California Privacy Protection Act, Cal. Civil Code § 1798.100 et seq. ("CCPA") for the "proposition that Californians have a reasonable expectation of privacy in their IP addresses that they use to gain access to the Internet." Plaintiff's Opposition to Motion to Dismiss [Dkt. 21] ("Opposition) at 2. These statutes are inapposite. Plaintiff is not bringing claims under the ECPA, CCPA, or for invasion of privacy. Nor could she bring these claims—even after the enactment of ECPA and CCPA, courts continue to recognize that "there is no legally protected privacy interest in IP addresses." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020). Moreover, courts interpreting Section 638.51 have held that whether individuals have an expectation of privacy in IP addresses "is immaterial" to the "elements of Plaintiff's claim." *Greenley v. Kochava, Inc.*, No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *15 (S.D. Cal. July 27, 2023). These unrelated statutes have no bearing on the inapplicability of Section 638.51 to the alleged collection of IP addresses at issue here because they do not discuss the sole statutory provision at issue here. Plaintiff ignores the cases that *have* discussed the relevant statute, Section 638.51. Just as in those cases, Plaintiff, here, voluntarily sent her IP address to the Maidenform Website, which was *necessary* for Plaintiff to interact with the website. *See, e.g.*, *Capitol Records*, 2009 WL 1664468; *see also Malibu Media*, 2013 WL 12180709.

Finally, Plaintiff misses the mark on the critical distinction between "dynamic" and "static" IP addresses, and instead questions "what effect, if any, having a 'static' IP address versus a 'dynamic' IP address would have on Plaintiff's privacy interest. Dkt. 21 at 4:22-24. Instead, Plaintiff relies on inapposite case law to make the point that while "associating a dynamic IP address with a particular user at a given moment might

make the task of unmasking the identity of a particular user of a website 'more difficult,' … it does not make it impossible. *Id*. at 5:9-12. This, of course, does nothing to remedy Plaintiff's shortcomings: Plaintiff fails to state a claim because she does not allege whether her IP address is unique to her or whether it's dynamic and everchanging. And in any event, her own case law supports the notion that identifying a particular user from a dynamic IP address is "difficult," (*id*.) and, thus, is not "likely to identify the source." Cal. Penal Code § 638.50(c).[1]

**B. The Alleged Software Is Not a Pen Register or Trap and Trace Device**

CIPA's legislative materials and statutory framework illustrate that Section 638.51 was never meant to apply to the software allegedly used here. Plaintiff concedes that her proposed application of Section 638.51 to software that collects IP addresses is incompatible with the remainder of the statute—specifically, Section 638.52. While Plaintiff attempts to blame this fatal flaw in her reasoning on Legislative oversight, that argument in and of itself is contrary to principles of statutory interpretation: it "encroaches on the legislative power" by "curing a perceived omission or inclusion beyond the bounds permitted by interpretation"—a purely "legislative function" that is outside the purview of this Court. *California Corr. Peace Officers Assn. v. Dep't of Corr.*, 72 Cal. App. 4th 1331, 1340 (1999).

"[W]ell-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect," and separate sections, like Sections 638.51 and 638.52 here, "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) (citations omitted); *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of

[1] Plaintiff's attempts to distinguish *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) fall short. Hanesbrands cited *Forrester* for the proposition that internet users lacked a reasonable expectation of privacy in the IP addresses of the websites they visited because "they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." Nothing in Plaintiff's explanation undercuts this.

Legal Texts 167 (2012) ("The text must be construed as a whole." (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.")). Applying this principle of statutory interpretation, this District in *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer,* 885 F. Supp. 197, 199–200 (C.D. Cal. 1995) relied on this *same* pre-Patriot Act language still used in Section 638.52 to find the federal statute's language *inapplicable* to technologies similar to the software alleged here. *Id.* Like in *Digital Analyzer*, here too the "construction of" the same "related sections" of CIPA (Cal. Penal Code § 638.52) evidence a clear legislative intent to apply only to physical devices capable of recording telephone numbers, not IP addresses. *Id.* at 200. A contrary reading would render CIPA a nullity. If Section 638.51 prohibits the collection of IP addresses without a court order, Section 638.52 would create impossible hurdles to the acquisition of any court order under the statute—because the "identity . . . of the person . . . in whose name is listed the telephone line," and the "physical location of the telephone line to which the pen register or trap and trace device is to be attached," simply do not exist for IP addresses that are automatically sent by website browsers to the operator of a website. *See* Cal. Penal Code § 638.51(d)(1), (3).

The narrow word choice in Section 638.52 enacted in tandem with Section 638.51 reflects a legislative intent to limit "the proscription against pen registers and trap and trace devices to prohibit only devices that are 'attached' to a telephone line"; a deliberate choice that "cannot be assumed to be inadvertent." *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. at 199–200.

Indeed, in arguing to the contrary, Plaintiff only cites legislative materials relating to other sections of CIPA not at issue here (*e.g.*, Dkt. 21 at 7-8 (citing California Senate Bill 1428 (2009-2010 Regular Session)), such as CIPA's wiretapping provisions. And her citations to materials from the U.S. Congress concerning the enactment of the

Patriot Act's provisions suggest only that the federal act's expansion was intended to cover "software" that "collects the same information as a physical device" like call-identifying information, not IP addresses. 147 Cong. Rec. H7159-03, H7165, 2001 WL 1266413 (Oct. 23, 2001). There is no indication the California statute was ever meant to apply to software capable of collecting IP addresses sent by any device accessing a website. "Finally, the court may consider the impact of an interpretation on public policy, for where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." *Mejia*, 13 Cal. 4th at 663 (citations and quotation marks omitted). In evaluating the legal consequences that flow from two competing interpretations, the California Supreme Court has also provided: "[W]here the language of a statutory provision is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted." *People ex rel. Lungren v. Superior Court*, 14 Cal. 4th 294, 305 (1996) (citations and quotation marks omitted).

As explained, *supra* at § II.A, Plaintiff's interpretation of the statute would create liability every time a visitor connects to a website, a rule that would make operation of any website impossible. Such an "anomalous outcome[]" premised on an "unreasonable, and impossible, interpretation of the statute's reach" should be rejected. *ACA International v. FCC*, 885 F.3d. 687, 697 (D.C. Cir. 2018).

**C. Plaintiff Has Failed to Plead that the Statutory Exceptions Do Not Apply**

**1. Consent**

Plaintiff provides no reason to reject this established, commonsense carve-out from Section 638.51. Failing to grasp the actual rulings in *Capitol Records* and *Malibu Media*, she mischaracterizes Hanesbrands' argument as a "fact-based" consent defense prematurely raised at the pleadings stage. Dkt. 21 at 9-11. Plaintiff's response misses the mark.

The statute here, Section 638.51, explicitly requires non-consent, which means that Plaintiff needs to affirmatively plead it. Even if the Court were to accept Plaintiff's ambiguous and conclusory allegation as constituting non-consent, her claim still fails. *Compare* Compl. ¶ 25 ("Defendant did not obtain Plaintiff's knowing and informed consent to the preceding acts, nor did Defendant obtain a court order authorizing it to do so"), *with* Dkt. 21 at 10 ("Defendant did not obtain Plaintiff's knowing and informed consent to [use pen register software to access Plaintiff's device and install tracking code on it in violation of California law]").

As *Capitol Records* and *Malibu Media* recognized in interpreting the analogous Pen Register Act, a rudimentary understanding of how Internet-based communications function makes the carve-out for the intended recipient's collection of IP addresses indispensable, since "IP address[es] [are] transmitted as part of the normal process of connecting one computer to another over the Internet." *Capitol Records*, 2009 WL 1664468, at *1. "An internet user creates connection data by 'making the affirmative decision to access a website,' just as the user of a landline generates a telephone-number record solely by choosing to dial it." *United States v. Soybel*, 13 F.4th 584, 593 (7th Cir. 2021) (citation omitted). As such, "the Pen Register Act does not bar recordings of the contents of communications that are made with the consent of one of the parties to the communication." *Capitol Records*, 2009 WL 1664468, at *3. This conduct is not subject to culpability under Section 638.51.

This is further evidenced by Plaintiff's own allegations—which Plaintiff does not refute or address in her Opposition. Plaintiff purposefully visited the Maidenform Website to "test" it out for purposes of this litigation. Plaintiff alleges that she is a "consumer privacy advocate who works as a 'tester.'" Compl. ¶ 4. As part of those efforts, Plaintiff "recently visited" the Maidenform Website. *Id*. at 3. This is where she claims that Hanesbrands deployed its pen register or trap and trace "beacon." *Id*. ¶ 19. In other words, Plaintiff knew that websites must identify IP addresses to function and she purposefully went to the Maidenform Website, knowing that it would identify the

IP address of the device she was using at that moment, so she could bring this lawsuit. As such, there can be no question that Plaintiff consented, and, therefore, even if Plaintiff had plausibly alleged the existence of a pen register or trap and trace spyware, her claim would clearly fall within the statute's exception.

Doubling down on her mischaracterization that Hanesbrands' argument is a "fact-based" consent defense prematurely raised at the pleadings stage, Plaintiff relies on several inapposite cases for the proposition that this Court should follow the decisions that have rejected deciding the issue of consent at the pleading stage. Dkt. 21 at 9-11. None of these cases are applicable. Each of the cases is a CIPA wiretapping case—an entirely different statute that has no bearing whatsoever on a claim under Section 638.51. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756 (N.D. Cal. 2023) (CIPA wiretapping case); *Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1101 (C.D. Cal. 2023) (same); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1076 (C.D. Cal. 2023) (same); *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (same); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) (same). Plaintiff has not and cannot make the same allegation here in a Section 638.51 case.

**2. Electronic Communication Service**

Plaintiff avoids addressing the crux of Hanesbrands' argument. As Hanesbrands discussed in its Motion, even if Hanesbrands implemented a "pen register" or a "trap and trace device," Plaintiff cannot state a claim because she *fails to allege* that Hanesbrands was not using the pen register or trap and trace device "[t]o operate, maintain, [or] test a wire or electronic communication service." Cal. Pen. Code § 638.51(b)(1). "[It] is Plaintiff's burden to allege facts sufficient to give rise to a plausible inference that every element is satisfied." *Levy v. adidas AG*, No. CV18-6542

PSG (MAAx), 2018 WL 5942000, at *4 (C.D. Cal. Nov. 13, 2018). Section 638.51(a), which is the basis for Plaintiff's claim, provides exceptions, including: "(1) To ***operate, maintain***, and test a wire or electronic communication service." *Id.* § 638.51(b)(1). As Plaintiff concedes, nowhere does Plaintiff allege that Hanesbrands was not using these devices or processes "[t]o ***operate, maintain***, and test a wire or electronic communication service." *Id.* § 638.51(b)(1). Instead, in her Opposition, Plaintiff says, "[a]ssuming *arguendo* that Plaintiff has th[is] burden" … the Court should reasonably infer from the Complaint's allegation that Defendant is not "'[a] provider of electronic or wire communication service.'" Dkt. 21 at 11. In essence, Plaintiff is asking the court to fill in gaps that she had the burden to plead. The failure to allege that Hanesbrands was not using the alleged pen register or trap and trace device in a manner allowed by the statute means that Plaintiff has not adequately pled the elements of her cause of action, and her cause of action must, therefore, be dismissed.

The Court does not need to look further, but even so, Plaintiff's arguments still fail. Plaintiff relies on cases and statutes that interpret statutes that have no bearing on the statute at issue. As explained in the Motion, Plaintiff's position is nonsensical. It would be impossible for Hanesbrands to provide that electronic communication service without knowing who was requesting access to that service, what they were requesting (*e.g.*, the images, links, text, and sounds that comprise a website), and where they wanted it delivered (their device). The use of the IP address answers all those questions because "[a]n IP address 'is used to route information between devices'" on the internet. Compl. ¶ 9 (cleaned up). Therefore, logging the IP address is necessary "[t]o operate" Hanesbrands's "electronic communication service," and therefore, Hanesbrands is exempted from the statute as a provider of an electronic communication service who is using the allegedly proscribed devices to "operate" or "maintain" that service. Cal. Pen. Code § 638.A51(b).

**D. Plaintiff Does Not Have a Private Right of Action Under Section 638.51 or Section 637.2**

Plaintiff does nothing to meet her burden of showing that she has a private right of action under Section 638.51. "[W]hen neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader Ins. Co. v. Scottsdale Ins. Co*., 54 Cal. App. 4th 121, 133 (1997). But Plaintiff has not met that burden. Instead, Plaintiff alleges the legal conclusion that "CIPA provides for a private right of action and imposes civil liability and statutory penalties[.]" Compl. ¶ 23. She cites only Section 638.50(c)—which is the definition of a "trap and trace device"—and to *Greenley*, 2023 WL 4833466, at *15–16. But *Greenley* does not discuss whether Section 638.51 confers a private right of action. *See generally Greenley*, 2023 WL 4833466. In addition, in her Opposition, Plaintiff infers legislative intent. She posits—without any support—that "[t]he 2015 Legislature presumably made a deliberate choice in adding section 638.51 to Chapter 1.5," and that [t]he Legislature surely had to have known that by doing so, it would enable persons injured by a violation of section 638.51 to obtain civil remedies via a civil action. Dkt. 21 at 15. This falls short of satisfying her burden.

**E. Even if Section 637.2 Conferred a Private Right of Action, Plaintiff's Lack of Injury Means She Lacks the Requisite Statutory Standing to Bring this Claim**

As Hanesbrands explained in its Motion, Plaintiff fails to allege how the "use" or "install[ation]" of one of these devices puts her in the set of injured people endowed with a right to sue. The absence of injury is the absence of statutory standing, warranting dismissal of her claim. Dkt. 12 at 14-16. Completely ignoring Hanesbrands' arguments and caselaw, Plaintiff attempts to sidestep the real issue and instead focuses on a red herring: *damages*. Dkt. 21 at 15-16. Plaintiff's only response to the challenge to injury—a threshold element—is that "[a]ny invasion of a privacy involves an affront to

human dignity." *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660–61 (1993). *First*, even if an invasion of privacy involves an "affront to human dignity," there must still be an invasion of a privacy right. As explained above and in the Motion, Plaintiff has not and cannot allege that Hanesbrands invaded her privacy and caused a real injury to her because she knowingly provided her IP address to Hanesbrands as a "tester" for the purpose of bringing this lawsuit. *See supra* at § II.C; Dkt. 12 at 14-16. *Second,* Section 637.2 only confers a private right of action on the injured under this chapter and then says "actual damages" are not required. The qualifier cannot be read to sallow the rule. Plaintiff still needs to show injury, which she has not.

## III. CONCLUSION

For the foregoing reasons, Hanesbrands respectfully requests the Court to grant its motion to dismiss.

Respectfully submitted,

SIDLEY AUSTIN LLP

Dated: March 25, 2024

By: */s/ Amy P. Lally*
Amy P. Lally
Anna Tutundjian

*Attorneys for Defendant Hanesbrands Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Hanesbrands Inc., certifies that this brief contains 3,322 words, which complies with the word limit of L.R. 11-6.1, as well as this Court's Standing Order.

Dated: March 25, 2024

*<u>/s/ Amy P. Lally</u>*
Amy P. Lally